Arnold Edwin **RILES**

v.

**UNITED STATES of America.**

No. 14893.

United States Court of Appeals Fifth Circuit.

June 21, 1955.

Hayden C. Covington, Brooklyn, N. Y., Hans G. Taenzler, Jr., Jacksonville, Fla., for appellant.

Thomas A. Larkin, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty. for the Southern Dist. of Florida, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal is by an accused claiming to be a conscientious objector from a conviction for a refusal to submit to induction into the armed forces of the United States as ordered by the Selective System, which placed the accused in Class 1–A.

At the outset we should say that this case and others argued before us at the same time were presented to this court and are considered by us in light of the four cases relating to the conscientious objector status decided by the Supreme Court on March 14, 1955.[1]

1. Sicurella v. United States of America, 348 U.S. 385, 75 S.Ct. 403; Simmons v. United States of America, 348 U.S. 397, 75 S.Ct. 397; Gonzales v. United States of America, 348 U.S. 407, 75 S.Ct. 409, and Witmer v. United States of America, 348 U.S. 375, 75 S.Ct. 392.

It is also probably appropriate to point out that complications have arisen from cases of this type in both trial and appellate courts from the fact that each member of the religious group known as Jehovah's Witnesses considers himself to be a minister of religion, and he is so considered by his co-religionists. The putting forward of the claim for ministerial status (IV–D) by a member of this faith, therefore, should not of itself be considered as any evidence of insincerity on the part of an ordained (baptized) member of the Jehovah's Witnesses if the registrant fails to sustain the claim.[2]

■■ Furthermore, it must be kept in mind that the classification by the local draft board or the appeals board of ministers of religion is based on objective standards establishing that the registrant either is or is not a "regular or duly ordained minister of religion," and not on his sincerity of purpose, whereas the classification as conscientious objector, 1–A–O or 1–O, if he objects even to non-combatant military duty, is based on subjective standards, motive and sincerity, which, while difficult to prove, are subject to legal and judicial ascertainment in many fields of jurisprudence.[3]

■ We should also bear in mind, in the consideration of this case, as in all of this type, that "the primary question here is whether, under the facts of this case, the narrow scope of review given this Court permits us to overturn the selective service system's refusal to grant petitioner conscientious objector status. It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 1954, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132. The classification can be overturned only if it has

'no basis in fact.' Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567." Witmer v. United States of America, 348 U.S. 375, 380–381, 75 S. Ct. 392, 395.

This case is somewhat unusual in that the local board classified Riles 1–O three different times, and it was only when he appealed to the appeals board from the local board's refusal to give him a ministerial classification that he was classified 1–A, subject to full induction and military duty.

The Government frankly adopted the statement of facts set out in appellant's brief, so, excluding any conclusions therein expressed, we give this statement of facts, since the facts are essential to an understanding of our decision.

Appellant registered with Local Board No. 21, Jacksonville, Florida, on September 18, 1950. He was mailed a questionnaire on October 5, 1951. The questionnaire was returned and filed with the local board.

In Series VI of the questionnaire on page 3 appellant answered "I am a minister of religion * * * I do regularly serve as a minister * * * I have been a minister of the Jehovah's Witnesses since Oct. 1, 1941 * * *. I have been formally ordained * * * my ordination was performed on Oct. 1, 1941 by F. L. Boyer at Jacksonville, Fla."

Appellant answered in Series VIII that in secondary work to his ministry he engaged in servicing bus tires for the Firestone Tire and Rubber Co. He showed at that time he worked an average of forty hours per week and earned $190 per month. He stated that his vocation was the ministry. He added that he also went to high school.

In Series XI on page 6 of the questionnaire he showed that he was a full-time student at Jacksonville School of Technology majoring in high school courses preparing for the ministry.

---

2. Mayfield v. United States of America, 5 Cir., 220 F.2d 729.

3. Dickinson v. United States of America, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392.

In Series XIV appellant stated: "By reason of religious training and belief I am conscientiously opposed to participation in war in any form and for this reason hereby request that the local board furnish me a Special Form for Conscientious Objector (SSS Form No. 150) which I am to complete and return to the local board for its consideration." Under "Registrant's Statement Regarding Classification" Riles stated: "In view of the facts set forth in this questionnaire it is my opinion that my classification should be 4–D." In this same section of the questionnaire he referred the local board to "attached statements." Riles signed the certificate at the end of the questionnaire.

Without sending to Riles the special form for conscientious objector as requested the local board on October 15, 1951, based upon the statement appearing in the classification questionnaire, classified Riles as a conscientious objector. He was placed in Class 1–O. The local board did not notify Riles of this classification promptly. However, on October 16, 1951, it wrote Riles a letter and enclosed the special form for conscientious objector. In this letter he was requested to complete the form and return it at once. Riles completed the form and returned it to the local board promptly.

He signed Series I(B). He stated: "I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training or service in the armed forces. I, therefore, claim exemption from combatant training and service and, if my claim is sustained, I understand that I will, because of my conscientious objection to noncombatant service in the armed forces, be deferred as provided in Section 6 (j) of the Selective Service Act of 1948 [50 U.S.C.A.Appendix, § 456(j)].

Riles answered that he believed in the Supreme Being. In answer to Series II 2, he described the nature of his belief supporting his conscientious objection and stated that his beliefs involved duties superior to those arising from any human relation. In an attached statement he answered further that he was a person "who has dedicated his entire life to the service of Jehovah God as a minister." He stated that he had made "a complete unbreakable agreement to follow in the footsteps of Christ Jesus."

In Series II 3 he explained how, when and from whom and from what source he received his religious training and belief. He said that the source was the Bible. He stated: "I received this religious training from my parents." He added that his training had "been continued since I was a child." He stated that he relied upon Edward E. Wieland for religious guidance. In Series II 5 he answered under what circumstances he believed in the use of force. He stated that he was entirely neutral towards the battles of the nations but wholly devoted to the kingdom of God. He cited Scriptures and then added: "I am not a pacifist. I would fight to protect my person and my right to preach if I am resisted by force."

He was asked in Series II 6 to describe the behavior in his life that conspicuously demonstrated the depth of his convictions. He answered: "In 1943 I was deprived of public schooling. To have continued in school I would have been required to violate my religious convictions. I have continued in my religious training and activity."

Riles stated that he had given public expression to the views expressed as a basis for his conscientious objections. He stated that he preached God's kingdom and the coming destruction of wickedness. He stated: "My duty is one of warning similar to Noah, Jeremiah and Isaiah and other prophets of Jehovah. Ezekiel 3:17, 18."

In Series III 1 he gave the address of the schools that he had attended. In Series III 2 he listed his work and employment. In Series III 3 he gave the list of his place of residence. In Series III 4 he gave the names and addresses of

his parents and stated that both were "Jehovah's Witnesses" in Series III 5.

Riles answered that he had never been a member of a military organization. He stated in Series IV 2 that he was a member of a religious organization. He gave the name: "Jehovah's Witnesses." He stated that he became a member on October 1, 1941, at Jacksonville, Florida, by ordination. He gave the name and location of his church.

He was asked to describe carefully the creed of Jehovah's Witnesses in reference to participation in war. He referred to an attached booklet entitled "Neutrality." He showed that the only organization that he had ever been affiliated with was the Watchtower Bible and Tract Society as an ordained minister. He signed the conscientious objector form.

On November 1, 1951, the principal of the Jacksonville School of Technology certified that Riles was a full-time student in the eleventh grade and "doing passing work." This was filed with the local board on November 12, 1951.

Fred L. Boyer certified that Riles was one of Jehovah's Witnesses and that "he cannot discontinue his ministry without being a covenantbreaker which is worthy of death. Romans 1:31, 32. He is recognized by the several congregations of Jehovah's Witnesses in Jacksonville as being an ordained minister."

Mrs. J. D. Swancy certified that he was a sincere Christian who fully observed God's word and abided by its instructions, "he being a qualified minister." Edward E. Wieland certified: "Since February, 1951, Mr. Riles has regularly engaged in the field missionary preaching of Jehovah's Witnesses as commanded by Christ Jesus at Matthew 24:14."

Mr. Wieland certified further: "He is recognized by this congregation as a duly ordained minister of the Gospel and is authorized to preach 'this Gospel of the Kingdom,' proclaiming the name of Jehovah God and of Christ Jesus, His king."

Following receipt of the notice of the conscientious objector classification of 1–O sent him on October 25, 1951, Riles wrote the local board on November 2, 1951, for an opportunity to appear before the board personally. He stated that he was entitled to a student's classification and that he was a duly ordained minister of religion. The local board wrote him on November 5, 1951, that with the information from school "we will reclassify you in Class 1–S(H)," a student's classification.

Riles on November 9, 1951, wrote the local board that since the 1–S(H) (student's) classification "is a proper temporary, classification and would not interfere with my ministerial activities, I would accept it."

The local board on November 15, 1951, classified him 1–S(H). He was notified of this student's classification on November 15, 1951. The student's classification was continued on July 17, 1952, to September 16, 1952. He was notified of the continuation of classification.

The local board on September 18, 1952, again placed Riles in 1–O. This classification is that of a conscientious objector opposed to both combatant and noncombatant military service. The classification required him to perform alternate civilian work contributing to the national health and welfare. He was notified of this classification on September 23, 1952. He requested an opportunity to appear before the board by letter dated October 1, 1952. He stated that he could not turn back from his preaching as that would make him worthy of death. He stated that he had become more mature and continued "to take a larger share in 'my Father's work.'" He stated that he was now working "directly from the headquarters of the Watchtower Bible and Tract Society." He submitted to the local board a certificate of ordination issued to him as a pioneer. This was dated September 30, 1952.

At the personal appearance he explained to the board about his pioneer ministry. A memorandum of the personal appearance was made by the local board. It showed that he attended school from 8:00 o'clock in the morning to noon

five days a week. It showed also that he worked at the Greyhound Bus Lines servicing tires two nights a week, eight hours a night. He was engaged in the pioneer ministry work also and as such was required to devote one hundred hours per month to the preaching work. He devoted time to the ministry each evening and Saturday and Sunday in order to complete the 100 hours per month. The board stated: "He is a conscientious objector to both combatant and non-combatant service." The board concluded: "The members of the board declined to reopen his classification and he is continued in Class 1–O."

He was notified of this classification on October 6, 1952. He appealed his classification on October 14, 1952. The file was forwarded to the appeal board on that date.

The appeal board on November 5, 1952, classified him in Class 1–A. This action constituted a reversal of the classification as a conscientious objector given to Riles by the local board. It made him liable for unlimited military training and service. The classification was made by the appeal board without referring the case to the Department of Justice for an investigation by the FBI, a hearing before a Department of Justice hearing officer and a recommendation to the appeal board by the Assistant Attorney General.

The file was returned to the local board. On November 19, 1952, appellant was notified of the classification. The local board on November 25, 1952, entered "Class 1–A" on the minutes of action and showed a vote of three to nothing. No card or notice of this classification was mailed to Riles. He was notified to report for a preinduction physical examination. He reported and was found acceptable. He wrote a letter to the state director requesting that his case be appealed to the President. This was dated November 29, 1952. A copy of the letter was filed with the local board on December 1, 1952. The state director on December 2, 1952, called for the file to be sent in to him for review. The state di-

rector on January 7, 1953, requested the local board to consider the letter of Riles written to the state director dated November 29, 1952, and determine whether that was new and additional information requiring a reopening and reconsideration of the case. This order of the state director was dated January 7, 1953. On January 15, 1953, the local board notified the state director that it did not consider the new information appearing in the letter of November 29, 1952, warranted a reopening and reconsideration of the case. Riles again on January 16, 1953, requested that his case be appealed to the President. A short letter was written on that date to the state director. A lengthy letter was written to the National Director of Selective Service dated January 16, 1953. Pursuant to the request to the state director the local board on January 20, 1953, forwarded the file to state headquarters for further review. The state director took an appeal to the President on January 21, 1953, as stated in his letter to the National Selective Service Appeal Board dated January 21, 1953. The state director specified his reason for taking the appeal. It was that "in view of the fact that the local board had previously classified this registrant 1–O and the appeal board classified the registrant 1–A, the file is being submitted to your body for a determination of his correct classification."

The National Selective Service Appeal Board on March 17, 1953, by a vote of three to nothing classified Riles in Class 1–A.

Appellant was ordered on March 31, 1953, to report for induction on April 20, 1953. Appellant reported for induction on April 20, 1953, but refused to submit to induction.

Appellant makes two contentions. The first is that the National Selective Service Board has no basis in fact for the denial of the claim for classification of conscientious objector and the second is that the appellant was denied procedural due process of law by the application of § 1626.25 of Selective Service Regulations

which denied him the right to have his review sent to the Department of Justice for an investigation, hearing, report and recommendation upon his claim for classification as a conscientious objector, which regulation appellant says is in violation of Section 6(j) of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 456(j).

The Government counters by saying, as to the first contention, that the record before the board supports a finding that Riles was not sincere in his conscientious objector claim and that his answer detailing the circumstances in which he would fight "by command of God" justifies the refusal of the Board to find that he was "opposed to * * * war in any form," 50 U.S.C.A.Appendix, § 456 (j); and, as to the second contention, that the regulation denying a registrant the reference to the Department of Justice in cases in which the local board ruled favorably to him was fully authorized by the statute.

Agreeing, as we do, with appellant's first ground, we find it unnecessary to decide, or even consider, the second ground.

We shall then consider the contention by Riles that there is no basis in fact for the action of the appeal board withdrawing from him his 1-O classification, which had been thrice given him by his local board. With this contention we are forced to agree.

■ The support the Government finds in the record for the action of the appeal board is twofold; one is what it considers conflicting statements and the acceptance of a high school student's deferment as long as it was available to him and his subsequent inability to establish a ministerial status; the other is his expressed view on theocratic wars. Taking these points in reverse order, we say that the Supreme Court in the case of Sicurella v. United States of America, supra [348 U.S. 385, 75 S.Ct. 406], has decided the second point adversely to the Government's contention.

The Court there said:

"We believe that Congress had in mind real shooting wars when it referred to participation in war in any form—actual military conflicts between nations of the earth in our time—wars with bombs and bullets, tanks, planes and rockets. We believe the reasoning of the Government in denying petitioner's claim is so far removed from any possible congressional intent that it is erroneous as a matter of law."

■ We are then here faced with a case in which there is a conviction and sentence of three years imprisonment of the registrant whom the local draft board three times found to be sincere and honest in his contention that he was religiously opposed to participation in war in any form. If there is any affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete and accurate picture of his activities,[4] we must affirm. However, as was said by Judge Rives, of this court, in Williams v. United States, 5 Cir., 216 F.2d 350, 352:

"If there was no evidence before the board to refute the defendant's professed belief and if that belief was sincere on his part, then under the Act of Congress, he was exempt from training and service. As stated, we have found no such evidence in the record. A thorough reading of the record casts no doubt upon the defendant's sincerity. Congress in its wisdom considered it more essential to respect a man's religious belief than to force him to serve in the armed forces. The draft boards and the Courts are bound to carry out that policy."

Here, Riles stated that in 1943 he was denied public schooling because of his adherence to his religious beliefs. In 1943 he was a boy eleven years old and a

4. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 157, 98 L.Ed. 132.

member of Jehovah's Witnesses. The record is silent as to what was meant by this statement. However, the Government argues that this statement is inconsistent with the fact that he later attended public high school in Jacksonville and that he accepted ·a temporary 1–S(H) student classification.

█ If he was entitled to deferment by reason of being a student in high school, then there was no reason that he shouldn't take it, since it enabled him to remain at home as provided in the law, and, as he explained, this did not interfere with his ministerial (within the concept of his religious faith) activities.

No such inconsistency, then, can be inferred; and the important fact is that the local board that heard his oral statement found none.[5]

█ The only other basis of inconsistency urged by the Government is that Riles made out a weak case for his classification as a full-time minister, and the Government criticized his failure to prove specific religious education, and commented adversely on the fact that he supported himself by employment for 40 hours per week, which work week lessened as Riles claimed to be spending more time in his religious duties. As we have pointed out, no specific training or duties need be shown to establish conscientious objector status other than his training in his home and by leaders of his religious group. The fact that the local board found in favor of Riles' sincerity and good faith, strongly confirms our conclusion that there is nothing in the record to support a finding that he was not truly a conscientious objector, and makes it quite evident, we think, that the appeal board must have placed its action withdrawing his 1–O classification on the idea, now held by the Supreme Court to be mistaken, that appellant's views on theocratic war could be a basis for disal-

lowing his claim. The record does not justify the action of the board in classifying Riles 1–A and his induction order was therefore void and his conviction for refusal to submit to induction must be set aside. The judgment is reversed with directions to enter a judgment of acquittal. See 28 U.S.C.A. § 2106; Bryan v. United States, 338 U.S. 552, 70 S. Ct. 317, 94 L.Ed. 335.

CAMERON, Circuit Judge: I concur in the result.

---

5. Although the record is silent on the subject, it is entirely possible that the boy was a victim of the then current effort to require certain forms of patriotic demonstration, generally resisted by Jehovah's Witnesses. It was in June 1943 that the Supreme Court held such efforts by local school authorities a violation of the 14th Amendment to the Constitution. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628.