**Winburn Carson KESSLER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 26049.**

United States Court of Appeals Fifth Circuit.

Jan. 13, 1969.

Richard N. Hubert, Haas, Holland, Freeman, Levison & Gibert, Atlanta, Ga., for appellant.

Charles L. Goodson, U. S. Atty., Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before BELL and COLEMAN, Circuit Judges, and HENDERSON, District Judge.

COLEMAN, Circuit Judge:

This appellant was convicted of refusing, on April 6, 1967, to be inducted into the armed forces of the United States, in violation of 50 App. U.S.C. 462. Although the record shows without dispute that Kessler was highly religious and had been previously convicted of no offense other than failing to yield the right of way, he was sentenced to the maximum, five years imprisonment. Because the record undoubtedly shows that the denial of conscientious objector classification to this registrant was wholly without basis in fact we reverse this conviction.

Kessler was born in a conscientious objector camp, Mancos, Colorado, where his father was doing civilian work as a conscientious objector in World War II. Three of his four uncles had refused to serve in the armed services, in that war, on religious grounds and were classified as conscientious objectors. These views coincided with those entertained by appellant's grandfather.

On May 18, 1964, Kessler registered with Local Board 52, Selective Service System, Effingham County, Georgia. He signed Series VIII of the form, stating: "By reason of religious training and belief I am conscientiously opposed to participation in war in any form and hereby request that the local board furnish me a special form for conscientious objector (SSS Form No. 150)."

The form was furnished. In response to the requirement that he describe the nature of his belief forming the basis for his claim, he wrote:

"I beleave (sic) in God. I also believe Christ is the son of God. We live under the laws of Christ. Christ laws teaches (sic) not to kill under any circumstances. His law is superior to the law of the land, Romans 13, 8–10. We are taught to love our enemies, Matt. 5, 38–48. Acts 7, 59–60, Stephen was stoned and didn't resist physically, but prayed for his enemies.

"Fear not him that can destroy the body but he who can destroy both soul and body in hell, Matt. 10, 28.

"When Christ was on the earth he stated that his kingdom was not of the world, if it was his servants would fight that he might be set free, Luke 6, 27–29, 35–36. For we wrestle

not against flesh & blood, Ephesians 6, 12.

"2nd Cor. 10, 3–4, for though we walk in the flesh, we do not war after the flesh for the weapons of our warfare are not carnal."

In other portions of the form, in answer to the inquiry as to how, when, and from whom or from what source he received the training and acquired the belief which formed the basis for his belief, he responded:

"From the Church of Christ, our Evangelist, my parents, and above all the 'Bible'."

Question No. 4 asked, "Give the name and present address of the individual upon whom you rely most for religious guidance". He responded, "Grand dad A. C. Kessler and the scriptures".

The next question required him to describe the actions and behaviour in his life which demonstrated the consistency and depth of his religious convictions. He responded, "I don't drink alcoholic drinks, curse, lie, steal, never been in a brawl, never been arrested nor in trouble with anyone for any reason at all. I attend church regularly, and participate in the church activities such as learning to teach".

The answers to further questions revealed that he was graduated from high school in 1963 and had been a member of the Oak Grove Church of Christ since August 29, 1960.

The last requirement was that he "describe carefully the creed or official statements of said religious sect or organization in relation to participation in war". The answer was, "The teaching by the Evangelist, Ministers, and Elders in the Church of Christ teach against war and against participating in either combat or non-combat service but each individual is free to choose as his conscious (sic) directs".

Kessler's Selective Service file contains a copy of the stipulation filed with the War Department by representatives of the Church of Christ on February 1, 1928, verifying the foregoing doctrine.

To anyone knowing anything of the beliefs of the members of the Church of Christ, including their literal adherence to the Scriptures and their universal practice of personally carrying the New Testament on their persons at all times, quoting chapter and verse with the most amazing facility, it would be difficult, if not impossible, to conceive of a more patent, *prima facie* exemplification of a genuine case of conscientious objection to participation in military activities.

In this state of the record the local board invoked the assistance of the field auditor of Selective Service. On April 30, 1965, the Clerk submitted the entire file, stating that on March 30, 1965, the registrant was

"Asked numerous questions by the board members". Only one question was reported. "One question was asked by board chairman 'you just don't like to wear the uniform', registrant answered 'no'. Board felt that registrant should be classified in 1–A".

We observe as a matter of common sense and elementary logic that one conscientiously objecting to military service would be expected to object to wearing the uniform. So far as the records of the local board are concerned this is the only evidence we can find to justify its denial of conscientious objector classification.

The field auditor promptly responded, "I would recommend the local board place this registrant in class 1–0". The Board declined to follow this recommendation and the case was appealed. The local board sent the following statement in writing to the appeal board:

"This local board is well acquainted with this registrant and his family. Registrant has been allowed to furnish the local board with any information he would like to place in his file before the file is forwarded on appeal. This board feels this registrant should stay in 1A as it is the opinion of the board that this registrants request for conscientious objector classification is not genuine, as we know some members of

his family have gone into the service and other members of his church have gone into the services. We feel that his claim as a conscientious objector is his way of staying out of the service."

■ The Appeal Board affirmed the 1–A classification. There was no basis for this action. The fact that some members of the registrant's family and some members of his church had gone into the service was of no probative value whatever in determining the sincerity of the individual beliefs of this appellant. In fact, the Court below very correctly so held.

The next step was that Kessler was notified to appear before a special hearing officer of the Department of Justice at Bull and Bay Streets in Savannah on January 7, 1966, for a hearing on his claim to exemption as a conscientious objector. A resume of this hearing is in the file. It was upon certain fragmentary aspects of this resume that the District Court erroneously held that there was some basis in fact for denying classification as a conscientious objector.

It is our view, however, that the resume of the ex parte investigation completely corroborates Kessler's contentions. It comprises five typewritten spaces, single spaced. As our Chief Judge Brown would say, "severely capsulated", the essence of it is as follows:

A school official said that Kessler was a devout Christian and he would consider registrant's claim as sincere; registrant was a very good worker and an exceptionally good boy who neither drank nor smoked nor cursed. Another teacher stated her belief in the sincerity of his claim "inasmuch as other members of his family and congregation have so claimed". Four neighbors vouched for the sincerity of Kessler's claim. An elder of the Church of Christ reported that he knew the family to be obedient to the father and grandfather and that he believed in the sincerity of Kessler's claim. Three other church members reported to like effect.

No wonder, then, that Colonel Harry O. Smith, Director of the Selective Service System for the State of Georgia, on September 2, 1966, wrote the local board for Effingham County that "Upon review of Resume of Inquiry from the Justice Department I am of the opinion that he is a conscientious objector as was his father before him." The State Director commendably suited his actions to his words and appealed the case to the Presidential Appeal Board. Incredibly enough, with no reasons assigned, that Board affirmed the 1–A classification.

In the meantime, as the file reveals, Kessler filed at least two written statements with the Selective Service System re-affirming his religious convictions, extensively quoting scripture in support of his views, but stating that he was willing to perform civilian duty in lieu of induction.

At last, Kessler was notified to report for induction and he did report. He declined, however, to take the step forward. He was asked to give a written statement of his reasons, which he did, as follows:

"April 6, 1967

I refuse to be inducted into the Armed Forces of the United States. In II Cor. 3–4 Paul teaches us (For though we walk in the flesh, we do not war after the flesh. For the weapons of our warfare are not carnal, but mighty through God to the pulling down of strongholds). Romans 13:9 states thou shalt not kill. Therefore I cannot enter into any type of Arm Service. I am willing to serve my time as a conscientious objector to help better the welfare of the Country.

Winburn Carson Kessler".

Indictment, prosecution, conviction, and sentence followed.

Prior to the trial on the merits counsel filed a motion for "appropriate relief or in the alternative to quash the indictment, assigning numerous grounds in support, including the one we consider to be entirely dispositive, that the denial of

conscientious objector classification was without any basis in fact. It is obvious that the question troubled the District Judge and we deduce from his memorandum opinion that he very nearly came to the view that the motion was due to be sustained.

He analyzed the record to determine whether there was any basis in the record for the denial of the conscientious objector classification. This, of course, was entirely correct. He properly rejected the idea that actions of others might be considered. He noted, however, that Kessler had told the special hearing examiner "that he did not agree with the American situation in Viet-Nam and did not agree with it in Korea". The Court concluded that no one reason in the record would provide a basis in fact for the 1–A classification but held that all grounds taken together would do so.

We are completely unable to agree.

■ In addition to that already said, disapproval of war in Viet-Nam or any other place is certainly consistent, rather than inconsistent, with conscientious objection to armed conflict. Really, if Kessler had said that he was a conscientious objector but nevertheless approved of any war this would have been such an inconsistency as to have undermined the sincerity of his religious objection to all wars. This Viet-Nam expression from an unsophisticated youth, under examination by a government representative, cannot, and by this Court will not, be transformed into such an objectively inconsistent act that it would override the great mass of evidence to the contrary.

The résumé, and the advisory opinion of a Department of Justice representative, make much of the fact that at one period Kessler worked as a rigger in a shipyard at Savannah. Kessler made an affidavit that if this facility was engaged in any form of war work he did not know it at the time and, further, when such was suggested to him he promptly quit work there and moved to Atlanta in search of other employment. This statement is entirely undisputed. In fact, this was a civilian facility. The only thing in this record to indicate that the shipyard might have been doing war work is the unverified statement that *after Kessler had appeared before the hearing officer* it did undertake work on a Navy vessel. It was held in DeRemer v. United States, 8 Cir., 1965, 340 F.2d 712, that employment in a factory engaged almost solely in defense work for the Navy, knowing such to be a fact, was an issue to be considered by the Selective Service Board in deciding the sincerity of a conscientious objector claim. That case is of no assistance to the prosecution here because the factory was engaged almost solely in defense work and the registrant knew it.

Our duty is clearly defined by the decisions of the Supreme Court and of this Court.

For example, in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), it was held that to be entitled to classification as a conscientious objector it is necessary only to have a conviction based upon religious training and belief, and this would include all sincere religious beliefs which are based upon a Power or Being or upon a faith to which all else is subordinate or upon which all else is ultimately dependent.

In Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955), it was held that if a registrant's belief entitles him to conscientious objector classification his claim cannot be defeated by an alleged objection, on religious grounds, to all governmental authority. This record is replete with statements in Kessler's handwriting that he is loyal to his country and is willing to serve it in any capacity except in a military activity.

■ The real test is the registrant's sincerity in objecting, on religious grounds, to participation in war in any form. This is purely a subjective question and no objective fact is relevant if it fails to shed light upon that sincerity or the lack of it, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ To be precise about it, the disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which *substantially* (emphasis added) blurs the picture painted by the registrant and thus casts doubt on his sincerity, Batterton v. United States, 8 Cir., 1958, 260 F.2d 233.

Indeed, it has been held, United States v. Stolberg, 7 Cir., 1965, 346 F.2d 363, that a registrant who by belief is opposed to combat or the killing of human beings and who believes that regard for human lives is essential was entitled to conscientious objector status although it was difficult to state what his religious beliefs were, it being shown that the registrant did not believe that the Supreme Being constituted a force outside of man and who did not know of any after life.

It has been repeatedly held by the courts in such cases as *Sicurella*, that those who are willing to use force in self defense, or in defense of the church, or in the defense of their brethren, or in defense of the lives of members of their families, and would kill if necessary to that end, do not thus lose their claim for classification as a conscientious objector if the true requirements are otherwise complied with.

Belief in theocratic warfare of the kind described in the Old Testament has been held not to be disqualifying, Hinkle v. United States, 9 Cir., 1954, 216 F.2d 8, cert. denied 348 U.S. 970, 75 S.Ct. 529, 99 L.Ed. 755; Ashauer v. United States, 9 Cir., 1954, 217 F.2d 788.

As a matter of fact, we need look no further than the prior decisions of our own Court for precedents requiring the reversal of this conviction.

We look first to Williams v. United States, 5 Cir., 1954, 216 F.2d 350. It was there held, "Congress in its wisdom considered it more essential to respect a man's religious belief than to force him to serve in the armed forces. The draft boards and the Courts are bound to carry out that policy". *Williams* (quoting Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132) further stated:

"[T]he Supreme Court has simplified the duty of courts in cases of this kind. 'The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities.' * * * The District Court stated that it found such evidence, but failed to state what it was. After a diligent search, we have found none."

The next year, in Riles v. United States, 5 Cir., 1955, 223 F.2d 786, we again decided a case in which the registrant had been denied classification as a conscientious objector. The Court acted in the light of the decisions of the Supreme Court in four cases handed down March 14, 1955.[1] Again, we held that the denial of the conscientious objector classification was without basis in fact and could not stand. The decision in *Williams*, supra, was cited with approval.

■■ *Riles* recognized that selective service boards have to decide conscientious objector questions upon subjective standards, motive, and sincerity of purpose. It further recognized that it is not for the courts to sit as super draft boards substituting their judgment on the weight of the evidence for that of the selective service system nor do they look for substantial evidence to support such determination. *The classification is to be overturned only if it has no basis in fact.* Riles had, for example, requested and enjoyed deferred status as a student after he had first requested conscientious

1. Sicurella v. United States of America, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436; Simmons v. United States of America, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453; Gonzales v. United States of America, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467; and Witmer v. United States of America, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

objector classification. There were other seeming inconsistencies. The decisive point was that the record really contained nothing to refute the registrant's professed religious belief upon which he based his claim to conscientious objector status and contained nothing to cast doubt upon his sincerity in adherence to his beliefs.

Whether there is a base in fact to support a board classification is a question for the courts to decide and not a matter to be submitted to the jury, Tamblyn v. United States, 5 Cir., 1954, 216 F.2d 345. Therefore, the sole responsibility for the determination of this question as to Kessler fell upon the District Judge. On this record, he should have held that there was no substance to the alleged inconsistencies laid to the registrant and that the denial of the classification was without any basis in fact. The prosecution should have been dismissed.

Consequently, as in *Riles*, the judgment now on appeal is reversed, with directions to enter a judgment of acquittal.

Reversed with directions.