**Application of Private Kevin M. O'CON-NOR, Petitioner and Plaintiff,**

**v.**

**Colonel William A. McKEAN, Commander U. S. Army, School Training Center, Fort McClellan, Alabama**

**and**

**Stanley Resor, Secretary of the Army, and Melvin Laird, Secretary of Defense, Pentagon, Washington, D. C., Respondents and Defendants.**

**Civ. A. No. 70–93.**

United States District Court,
N. D. Alabama, E. D.

May 5, 1970.

William H. Zinman, Baltimore, Md., Oscar Adams, Jr., Birmingham, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., for defendants.

## MEMORANDUM

McFADDEN, District Judge.

Petitioner seeks a writ of *habeas corpus* requiring the Army to release him as a conscientious objector.

Petitioner was born on 16 August 1949. He registered for the draft on or about his eighteenth birthday, was classified 1A shortly thereafter, and drafted into the Army on April 16, 1969. He claimed no exemption prior to induction. Petitioner applied for discharge from the Army on July 30, 1969 on the grounds of conscientious objection to war based on religious training and belief. He was at this time in the sixth week of a ten-week advanced infantry training program at Fort McClellan, Alabama.

The application was thereafter processed through military channels to the Office of the Adjutant General, Department of the Army, Washington, D. C. Counsel for O'Connor was retained sometime in September, 1969. Counsel corresponded with the Army on September 19, 1969 and made demand that certain documents be added to the file and considered by the Army in determining peti-

tioner's status as a conscientious objector. The Adjutant General returned the file to the field commander for reconsideration by various officers who had reviewed the application. The application was again processed to the Adjutant General where it was reviewed by Department of Army Conscientious Objector Review Board, and disapproved on December 30, 1969. Petitioner was still stationed at Fort McClellan at this time.

Petitioner was notified by DA letter dated December 31, 1969 that his application had been disapproved. Petitioner's petition for writ of habeas corpus and injunctive relief was filed in this Court on February 6, 1970. A hearing on the petition for writ of habeas corpus was held February 16, 1970, pursuant to a show cause order dated February 9, 1970.

Petitioner seeks the writ on three grounds:

A. The failure of the DA Review Board to obtain an advisory opinion from the Director of the Selective Service System, as required by Department of Defense Directive 1300.6 IV.B3.c(1);

B. That the Army does not have a "basis in fact" for the disapproval of Petitioner's application for discharge as a conscientious objector; and

C. That the denial of the application is a denial of the Due Process clause of the Constitution and further service in the Army abridges his first amendment Religious Freedom rights and his fifth amendment Equal Protection rights.

▆▆▆ Jurisdiction of a district court to issue writs of habeas corpus is limited to those cases in which the petitioner is confined or detained within the territorial jurisdiction of the court. Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); Duncan v. State of Maine, 295 F.2d 528, 530 (1st Cir. 1961), cert. denied 368 U.S. 998, 82 S.Ct. 624, 7 L.Ed.2d 536. A person on active duty in the armed services is "in custody" within the meaning of 28 U.S.C. § 2241. Brown v. McNamara, 387 F.2d 150, 152 (3rd Cir. 1967), cert. denied  Brown v.

Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968). Therefore, this Court has proper personal jurisdiction. This Court also has proper subject matter jurisdiction. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969).

## PROCEDURAL DUE PROCESS

Petitioner contends that the Army has denied him procedural due process in processing his application for discharge. This contention is based on the admitted failure of the Army to obtain an advisory opinion from the Director of the Selective Service System as required by AR 635–20 and DOD 1300.6 prior to a final determination by the DA Review Board on the application. DOD 1300.6 prescribes certain guidelines to be followed by the Services in processing requests for discharge based on conscientious objection. Pertinent parts of this directive provide:

b. Since it is in the national interest to judge all claims of conscientious objection by the same standards, whether made before or after entering military service, Selective Service System standards used in determining 1–O or 1–A–O classification of draft registrants prior to induction shall apply to servicemen who claim conscientious objection after entering military service.

c. Applications for conscientious objector classification will be referred to the Selective Service System (SSS) for an advisory opinion under the following circumstances:

  (1)  when the applicant has less than one hundred and eighty (180) days of active service and has applied for discharge,

  (2)  application for non-combatant duty (regardless of the amount of service) and applications for discharge where the applicant has more than one hundred and eighty (180) days of active service when there are special circumstances making the Director's opinion essential to a fair disposition of the case.

Respondents contend that an advisory opinion was not required under the facts of this case. Respondents submit that since the provisions of DOD 1300.6, subsection IV.B.3.c(1), do not clearly specify the point in time from which the 180 days must be calculated for purposes of determining whether an advisory opinion must be sought, it would be a reasonable interpretation of this provision to conclude that the time would begin to run upon petitioner's entry on active duty and continue to run up to the time of final determination by the DA Review Board—which in this case was 250 days. This position is highly presumptive and ignores the fact that petitioner's application went out of his control when he submitted it to his company commander; thereafter petitioner had no power to expedite the application as it wound its way up through military channels. Petitioner's application was filed when he had been on active duty 105 days, while it required 153 days to find its way from the company level, where submitted, to the DA Review Board. Admittedly, some time was consumed when the file was sent back to the field commanders for further consideration in light of additions to the application submitted by petitioner's attorney. A more reasonable construction of DOD 1300.6 IV.B.3.c (1), it seems, would be to calculate the time from entry on active duty to the date of the filing of the application. If such period is less than 180 days, as here it was, then the application must be referred to the Selective Service System for an advisory opinion if the Army is to be considered as having followed its own procedure correctly. The effect of such an omission is considered in the light of whether it denied petitioner of any "basic procedural fairness."

■ Army and Department of Defense regulations are due to be followed scrupulously once promulgated. United States ex rel. Brooks v. Clifford, supra.

■ However, it is clear from the cases which have considered the matter that the nature of the opinion to be sought from the Selective Service System is just what the name implies—advisory —and not binding on the Army. Bates v. Commander, First Coast Guard District, 413 F.2d 475 (1st Cir. 1969); Nason v. Secretary of the Army, 304 F. Supp. 422 (D.Mass.1969). It would appear therefore that a failure by the Army to secure such an opinion prior to its final determination of the application would not warrant the granting of the writ. The opinion of the Director, pro or con, would not be binding on the Review Board, but was designed merely to be considered with the rest of the evidence in the record when making the final determination.

Petitioner further asserted at the February hearing that he was denied procedural due process when the Army failed to provide him with a copy of AR 635–20 for his use in preparing his application; failed to advise him of his right to have counsel present at the O–3 officer hearing; and failed to give him sufficient time to prepare his application. Respondents contend that these omissions may have been improper; however, Army regulations do not require that copies of AR 635–20 be furnished applicants, plus, petitioner was unable to show that anything else of substance would have been included had he received a copy of the regulation prior to the preparation of his application and been given more time. As to the failure of the Army to advise petitioner of his right to counsel at the O–3 officer hearing, respondents argue that petitioner's rights were not prejudiced because the O–3 officer's recommendations were all in his favor.

Notwithstanding the fact petitioner has raised several errors committed by the Army in processing his application, he has failed in his burden of showing any substantial denial of procedural due process. Moreover, long before the final determination was made petitioner retained counsel and, save the submission of some third-party letters, no effort was made to amend the application or to supplement it. At the hearing before this Court no evidence was produced to show

prejudice from these omissions. Petitioner did state that had he had more time he would have included more material from the Second Vatican Council and the Bible.

■ Petitioner alleged violation of Constitutional rights but did not press this issue in briefs or oral argument to the Court. Suffice it to say that no one has a Constitutional right to be exempt from service in the Armed Forces. Keene v. United States, 266 F.2d 378 (10th Cir. 1959).

Petitioner's third and major attack is that the Army had no basis in fact for its determination.

The Court's review of the denial of petitioner's application is a sharply limited one; in fact, the narrowest known to the law. The sole substantive issue for this Court to decide is whether there was any basis in fact for the Army's decision. Robertson v. United States, 417 F.2d 440 (5th Cir. 1969); Brown v. McNamara, 387 F.2d 150 (3rd Cir. 1967), cert. denied Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968); United States ex rel. Tobias v. Laird, 413 F.2d 936 (4th Cir. 1969).

■ Judges are not given the task of running the Army and consequently must scrupulously avoid interference with legitimate Army matters. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L. Ed. 842 (1953). The doctrine of separation of powers requires judicial restraint. Hammond v. Lenfest, 398 F.2d 705 (2nd Cir. 1968). The disposition of an application for a conscientious objector discharge is peculiarly the Army's concern and prerogative. Nothing affects the ability to run its affairs so much as the control over the discharge of its own members. Obviously Congress makes the determination of the terms of conscription and the length of service for inductees; but subject to the statutory requirements, the administrative control of discharges must rest with the Defense Department. Any other system could cause administrative and perhaps military chaos. A court, therefore, properly

injects itself into this process only when the Army has abused its prerogatives and made a decision without any basis in fact.

The United States Supreme Court, in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), defined the tests to be applied in conscientious objector cases. Speaking through Mr. Justice Clark, the Court discussed § 6(j) of the Universal Military Training and Service Act:

* * * Within [the] phrase ["religious training and belief"] would come all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. This construction avoids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with the well-established congressional policy of equal treatment for those whose opposition to service is grounded in their religious tenets.

380 U.S. at 176, 85 S.Ct. at 859. The Court noted certain "scruples expressly excepted from the definition":

* * * The section excludes those persons who, disavowing religious belief, decide on the basis of essentially political, sociological or economic considerations that war is wrong and that they will have no part of it. These judgments have historically been reserved for the Government, and in matters which can be said to fall within these areas the conviction of the individual has never been permitted to override that of the state. * * * The statute further excludes those whose opposition to war stems from a "merely personal moral code" * * *.

*Id.* at 173, 85 S.Ct. at 858 (citation omitted). Mr. Justice Clark's opinion also contains the following admonition:

> * * * Local boards and courts in this sense are not free to reject beliefs because they consider them "incomprehensible." Their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious.

*Id.* at 184–185, 85 S.Ct. at 863.

Following the decision in *Seeger*, the Universal Military Training and Service Act was amended by Congress in June of 1967.[1] Section 6(j) of the Act was amended to read as follows:

> Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title, be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in § 4 (b) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board pursuant to Presidential regulations may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title, to have knowingly failed or neglected to perform a duty required of him under this title.[2]

The legislative history of § 6(j) reveals that the purpose was to amend the law to overcome the broad interpretation of the *Seeger* case and to provide local boards with a comprehensible criterion for recognizing bona fide conscientious objectors.[3] In considering the amendment, the Committee on Armed Services noted:

> The Director of Selective Service advised the Committee on Armed Services that in his judgment this undue expansion of the provision of the law relating to conscientious objection could very easily result in a substantial increase in the number of unjustified appeals for exemption from military service based upon this provision of the law.

> This circumstance coupled with the committee's awareness that the processing of conscientious objector appeals has resulted in delays exceeding 2 years, prompted the committee to completely rewrite this provision of the law.

> This provision of the law as re-written by the committee and contained in this bill would nonetheless continue to recognize legitimate claims for classification of registrants as conscientious objectors. However, the committee language requires that the claim for conscientious objection must be based upon "religious training and belief" as has been the original intent of Congress in drafting this provision of the law.

---

1. Universal Military Training and Service Act of 1967, 50 App.U.S.C.A. § 456(j).

2. Pub.L. No. 90–40, § 456(j) (June 30, 1967) (found in 1967 U. S. Code and Administrative News, page 111).

3. H.R.Rep. No. 267, 90th Cong., 1st Sess. 1 (1967) (found in 1967 U. S. Code and Administrative News, page 1315).

Commensurate with the national policy enunciated in the Universal Military Training and Service Act, the Department of Army issued its own regulations pertaining to the processing of personnel separations by reason of conscientious objection.[4] The policy of the Army as stated in this regulation is as follows:

3. *Policy.*

a. Consideration will be given to requests for separation based on bona fide conscientious objection to participation in war, in any form, when such objection develops subsequent to entry into the active military service.

b. Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make a timely claim for exemption constitutes a waiver of the right to claim. However, claims based on conscientious objection growing out of experience prior to entering military service, but did not become fixed until entry into the service, will be considered. Requests for discharge after entering military service will not be accepted when—

(1) Based solely on conscientious objection which existed, but which was not claimed prior to induction, enlistment, or entry on active duty or active duty training.

(2) Based solely on conscientious objection claimed and denied by the Selective Service System prior to induction.

(3) Based on essentially political, sociological, or philosophical views, or on a merely personal moral code.

(4) Based on objection to a particular war.

c. All requests for discharge based on conscientious objection will be considered on an individual basis in accordance with the facts and special circumstances in a particular case.

These policy considerations of the Army are substantially similar to those announced by the Department of Defense in its Directive of 10 May 1968.[5] This Directive, as amended, was in effect at the time the Army Review Board made its final determination of petitioner's application, and presumably its considerations entered into the Board's decision.

The criteria or tests to be applied by this Court in determining the sincerity of petitioner's objection can be found in DOD 1300.6, which provides:

*Criteria*

A. The criteria for determining conscientious objection are not absolute objective measurements which can be applied across the board, but are the result of extensive experience and practices which have been upheld in the Courts in connection with legal obligations for service. Factors to be considered in determining a person's claim of conscientious objection include (1) the claimant's training in home and church, general demeanor and pattern of conduct, employment in defense-connected activities, and participation in religious activities; and (2) the credibility of the claimant and the credibility of persons supporting the claim.

B. While church membership and church tenets are relevant in determining conscientious objection, they are not compelling. The courts have held that mere membership in a religious group teaching conscientious objection is not an automatic basis for classification as a conscientious objector nor does membership in a group which does not require conscientious objection constitute an automatic basis for denying such classification. The law does not require affiliation with any particular religious group for classification as a conscientious objector.

C. Evaluation of the sincerity of a claim of conscientious objection requires objective consideration of professed belief not generally shared by

4. Army Regulation 635-20.

5. Department of Defense Directive 1300.6.

persons in the military service. For that reason, particular care must be exercised not to deny bona fide convictions solely on the basis that the professed belief is incompatible with one's own.

Kessler v. United States, 406 F.2d 151 (5th Cir. 1969), outlines the tests to be applied in reviewing both draft board classifications and applications for discharge based on conscientious objection. In *Kessler* the defendant was convicted for refusing to be inducted into the armed forces. The Fifth Circuit Court of Appeals in reversing the conviction, speaking through Judge Coleman, stated:

The real test is the registrant's sincerity in objecting, on religious grounds, to participation in war in any form. This is purely a subjective question and no objective fact is relevant if it fails to shed light upon that sincerity or the lack of it, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

\* \* \* \* \* \*

As a matter of fact, we need look no further than the prior decisions of our own Court for precedents requiring the reversal of this conviction.

We look first to Williams v. United States, 5 Cir., 1954, 216 F.2d 350. It was there held, "Congress in its wisdom considered it more essential to repect a man's religious belief than to force him to serve in the armed forces. The draft boards and the Courts are bound to carry out that policy." \* \* \*

The next year, in Riles v. United States, 5 Cir., 1955, 223 F.2d 786, we again decided a case in which the registrant had been denied classification as a conscientious objector. \* \* \* Again, we held that the denial of the conscientious objector classification was without basis in fact and could not stand. \* \* \*

Riles recognized that selective service boards have to decide conscientious objector questions upon subjective standards, motive, and sincerity of purpose. It further recognized that it is not for the courts to sit as super draft boards substituting their judgment on the weight of the evidence for that of the selective service system nor do they look for substantial evidence to support such determination. *The classification is to be overturned only if it has no basis in fact.* 406 F.2d at 155–156.

Although these cases dealt with review of conscientious objector claims presented to local draft boards, the scope of judicial review and the test to be applied in determining the sincerity of the objection are identical to those on review from a denial of an application for discharge by the Army Review Board.

The Court must therefore apply these tests and determine whether there was a basis in fact for the Army's decision to deny the application.

█ It should be noted in the first instance that petitioner had the burden of showing that he was a conscientious objector within the legally acceptable definition of that term and the burden of showing that there was no basis in fact for the Army's decision denying the application. Keene v. United States, supra; Carson v. United States, 411 F.2d 631 (5th Cir.), cert. denied 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969).

Petitioner's application for discharge was accompanied by the following statement:

All through my life I have had certain behavior which can demonstrate the depth of my religious convictions. Some of these would be the following.

As a teen-ager I not only avoided fights but I tried many times to intervene in some, only to point out to the parties involved how stupid it is to waste such energy in a violent cause.

I have to this day never gone hunting because unless it is necessary to survive it is just a waste of a life, though not human, and the right to take a life was never delegated from the Su-

preme Being to myself, for sporting purposes, in my religion.

I have taken part in some minor non-violent peace meetings before entering the armed forces but now, after trying to be trained to kill for so long, I find myself obligated to attend all non-violent meetings I can be free for, to free my mind and soul of any violent ideas brought into it by such military training.

Before making out the application I was torn between mandatory armed forces and religious training but, the more the armed forces taught me about killing the stronger my beliefs became those of a conscientious objector.

I understand that most applications for C.O. are disapproved but, what is not realized is that it is not easy to write down your beliefs in such limited time. I am prepared to submit an appeal and refuse any military training if this application is rejected although, I know I might be sent to the stockade after my second rejection.

I have behind me the hope and prayers of many people and it is my hope that the Supreme Being finds that I am worthy of being a loyal follower and answers my prayers to resolve this conflict.

The explanation for failure to apply for conscientious objector status prior to entry into the service was:

Before entry into the armed forces, I did not realize the fact that I might be required to kill another human being, which is against my religious and personal beliefs.

The Army Review Board denied the application, and in doing so, stated:

Applicant's professed views became fixed prior to his entry into the active military service. Applicant does not truly hold views against participation in war in any form which are derived from religious training and belief.

In its opinion attached to its decision, the Board resolved the threshold question of sincerity against petitioner on the grounds that:

(a) Petitioner's unit commander recommended disapproval.

(b) All other unit commanders concurred.

(c) Petitioner's statement on his application: "before entering the Armed Forces I did not realize that I might be required to kill another human being, which is against my religious and personal beliefs," was incredible and therefore the credibility of the whole application was in doubt.

The Board then goes on to say:

Discharge of members who by reason of religious training and belief claim conscientious objection to participation in war in any form is a matter of Secretarial grace. Persons properly inducted into the service have no constitutional right to discharge because of conscientious objection. Accordingly, the applicant bears the burden of clearly establishing that he comes within the grounds provided by the Secretary under AR 635–20. The Board finds that O'Connor has not satisfied this burden. This finding is based on the fact that O'Connor states very little in his own application. He merely indicates that his position is that of the Roman Catholic Church and he sets forth some statements of Catholic theology. The Board finds this unconvincing, because as the Chaplain pointed out, the Roman Catholic Church does not compel one of its members to be a conscientious objector. Rather, the church leaves this matter up to the individual conscience. The Board realizes that O'Connor is free to select those portions of church teachings which he believes; but he has failed to adequately demonstrate to the Board exactly what his own views are. He merely copies some general statements on conscientious objection from Catholic authorities. Thus the Board is unsure exactly what his views are on several important issues. For example, O'Connor does not clearly cover the matter whether or not he could serve in a non-combatant capacity. It is the opinion of the Board

that O'Connor has not given the question the deep consideration that one would expect from a genuine conscientious objector.

█ The Army found that the petitioner had not shown the existence of an objection to war in any form based on religious training and belief and denied the application. This Court must affirm that action and deny the writ if there was a basis in fact for the decision, regardless of the Court's opinion as to the correctness of the decision. One of the reasons given for the denial was that petitioner's views became fixed prior to entry into the service and that petitioner had failed to establish they crystallized or became fixed after entry on active duty. Petitioner alleges crystallization as he must since a failure to assert existing beliefs would constitute a waiver.

Army Regulation 635–20 3.b.(1) provides for consideration of applications for discharge when the conscientious objection develops subsequent to entry upon active military service, but specifically excludes from consideration requests based solely on conscientious objection which existed, but not claimed, prior to induction. This same philosophy expressed in the comparable Selective Service regulations has been approved by the courts. Keene v. United States, supra; Nelloms v. United States, 399 F.2d 295 (5th Cir. 1968), cert. denied 393 U.S. 1071, 89 S.Ct. 724, 21 L.Ed.2d 716 (1969). There is no reason the Army regulation should not be given the same treatment.

Petitioner's statement of his beliefs in support of his application is somewhat lacking in fullness. He states that all through his life he had certain behavior demonstrating the depth of his religious convictions. He then illustrates this by relating the fact that he has never hunted or taken part in fights. He also relates that he had been taught by his Church and his parents that to kill or attempt to kill another human being is wrong. The religious beliefs on which the conscientious objection is based are those received from his Church and parents throughout his life. He nevertheless did not claim an exemption at any time prior to induction, notwithstanding the fact that he was classified 1–A for over eighteen months prior to induction. A failure to claim an existing exemption would clearly constitute a waiver and would make him ineligible for consideration for discharge under the Army's regulations. Petitioner contends however that his beliefs were latent and crystallized after induction. This is demonstrated, according to petitioner, by his assertion that he did not realize he might be required to kill another human being. He does not assert any change in religious belief, but merely that he thought his beliefs would not be put to the test and he would not have to face the choice between religion and duty. One may presume therefore that if his assumption has been correct and he could have served without being called upon to kill, he would have had no objection to service. Yet when he suddenly realized that he might be faced with the prospect of killing, he declined any service even of a noncombatant nature.

█ The Army found the statement that he did not realize he might be required to kill to be incredible. While this Court might not choose quite the same word, it is difficult to believe. The interviewing psychiatrist found him to be above average intelligence, and this was certainly the Court's impression. The Court finds it hard to believe that this young man did not realize that the business of armies is killing, though many members of armies throughout history have served, honorably and well, without personally being faced with that task. There was therefore, in this Court's opinion, basis in fact for the Army's finding that his beliefs were fixed before entry into the active military service.

█ The Army further resolved the issue of sincerity against petitioner because of this statement which it found was not believable. Any fact which casts doubt on sincerity, including actions or statements inconsistent with the claimed

exemption, may provide a basis in fact for denying the exemption. Carson v. United States, supra.

 A determination of religious beliefs and the sincerity with which they are held are subjective matters and incapable of direct proof.

> In making such fact determinations a judge senses rather than knows. However, doubt as to sincerity cannot be predicated upon "mere speculation." * * * And the fact-trior must give great weight to the Applicant's claim that his beliefs are an essential part of his religious faith. * * * However, the conformance in patterns of the Applicant's past life to the religious convictions he expresses when he seeks discharge is * * * equally crucial.

United States ex rel. Healy v. Beatty, 300 F.Supp. 843, 846-847 (S.D.Ga.1969), aff'd. 424 F.2d 299 (5th Cir. 1970).

The prior conduct of petitioner and this statement are, in the Court's opinion, inconsistent with the claimed exemption. The Army's decision does, in this Court's judgment, have a basis in fact and therefore this Court should not superimpose its judgment for that of the Army.

 The suddenness with which this conviction struck is another factor which impressed the Army and persuades the Court. Petitioner does not profess any sudden change or conversion nor, in reality, any crystallization of a prior latent belief. His whole thesis is that he did not realize he would have to test his belief. However, whatever it is, the timing of the application is an appropriate factor to be considered in resolving the sincerity issue. In a sudden realization claim, the Army may appropriately treat its sincerity as sufficiently suspect that the timing of realization may be considered as an objective fact which casts doubt on the sincerity. Bishop v. United States, 412 F.2d 1064 (9th Cir. 1969).

 Petitioner concedes in the statement accompanying his application that he had never given public expression to his views expressed as a basis for the claim. This fact is inconsistent with the claimed exemption and was an appropriate basis in fact for the Army's decision.

 The Court further believes that the opinions of petitioner's company commander as to sincerity was another factor which was properly considered by the Army. Brown v. McNamara, supra. Two Catholic Chaplains interviewed petitioner; one, Chaplain Fiedorczyk, resolved the issue of sincerity against petitioner; and the other, Chaplain Evangelisto, was of the opinion that his request for discharge was not based on religious beliefs. Certainly these were factors for consideration in making a decision on the application. Brown v. McNamara, supra.

The burden is on petitioner to show that there was no basis in fact for the Army's decision. This he has failed to do. It is this Court's opinion that there were several bases in fact to support the Army's decision. The Court will, therefore, not disturb the Army's decision and the petition for the writ of habeas corpus will be denied.

